Filed 10/31/25  Shah v. Woodbury University CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| VIVEK SHAH,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>WOODBURY UNIVERSITY, INC.,<br><br>    Defendant and Respondent. | B345491<br><br>(Los Angeles County<br>Super. Ct. No. 24STCV25365) |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Cherol Nellon, Judge.  Affirmed.

Vivek Shah, in pro. per., for Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, David M. Lester and Tracy A. Alexander for Defendant and Respondent.

_____

Appellant Vivek Shah challenges the judgment dismissing his lawsuit against respondent Woodbury University (Woodbury) after the court sustained Woodbury's demurrer with leave to amend, and Shah failed to amend his complaint. The complaint alleges Woodbury discriminated against Shah and aided and abetted nonparty Facebook, Inc. (Facebook)[1] in discriminating against Shah in violation of the Unruh Civil Rights Act (Civ. Code, §§ 51 et seq. & 51.5) (the Unruh Act).[2]  Specifically, it alleges that Woodbury and Facebook denied Shah, based on his age and gender, access to information about Woodbury's educational services by choosing to make Woodbury's advertisements on Facebook available only to a target demographic of female Facebook users between the ages of 18 and 24.

We agree with the trial court that Shah's complaint fails to allege a legally cognizable Unruh Act claim.  Accordingly, we affirm the judgment of dismissal, as well as the court's order striking Shah's accompanying statement of punitive damages, which Shah also challenges on appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Background:  The Unruh Act

The Unruh Act declares that "[a]ll persons . . .  are entitled to the full and equal accommodations, advantages, facilities,

---

[1] Facebook is now known as Meta Platforms, Inc. (See *Liapes v. Facebook, Inc.* (2023) 95 Cal.App.5th 910, 915 (*Liapes*).)  We shall refer to it as Facebook, however, consistent with the parties' briefing and popular vernacular.

[2] All further undesignated statutory references are to the Civil Code.

2

privileges, or services in all business establishments of every kind whatsoever," regardless of any personal characteristics, including gender and age.[3] (§ 51, subd. (b).) It prohibits any "business establishment" from "discriminat[ing] against, boycott[ing] or blacklist[ing], or refus[ing] to buy from, contract with, sell to, or trade with any person in this state on account of any characteristic listed or defined in" the Unruh Act. (§ 51.5, subd. (a).) The Unruh Act's purpose is to stand "as a bulwark protecting each person's inherent right to 'full and equal' access to 'all business establishments' " (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 167), including online businesses and websites. (See e.g., *White v. Square, Inc.* (2019) 7 Cal.5th 1019, 1023 & 1026-1028 (*White*); *Liapes, supra*, 95 Cal.App.5th at p. 915.)

"In general, a person suffers discrimination under the [Unruh] Act when the person presents himself or herself to a business with an intent to use its services but encounters an exclusionary policy or practice that prevents him or her from using those services." (*White, supra,* 7 Cal.5th at p. 1023; see *id.* at p. 1025 [" ' "a plaintiff cannot sue for discrimination in the abstract, but must actually suffer the discriminatory conduct" ' "]; see also § 52, subds. (c) & (a) [standing for "any person aggrieved

---

[3] "The statute lists 14 types of prohibited discrimination, such as sex, race, and religion. [Citation.] But the list is 'illustrative, rather than restrictive'—the statute forbids discrimination beyond these enumerated categories. [Citation.] Thus, while not expressly identified, the Unruh Civil Rights Act prohibits arbitrary discrimination based on a person's age—'a personal characteristic similar to the classifications enumerated in the [Unruh] Act.' [Citation.]" (*Liapes, supra,* 95 Cal.App.5th at pp. 919–920.)

by . . . conduct" constituting "a denial, . . . discrimination or distinction contrary to [the Unruh Act]"].)  "[M]ere awareness of a business's discriminatory policy or practice is not enough for standing under the [Unruh] Act." (*White, supra*, at p. 1023.)

### B.    The Complaint

Shah filed a lawsuit against Woodbury alleging the university discriminated against him in violation of the Unruh Act, and that Woodbury aided and abetted Facebook in so discriminating against him.  Although not a named defendant, Facebook is central to Shah's complaint.  "Facebook is a popular social networking service," and "[c]ompanies use it to send ads . . . to consumers.  They pay Facebook to place their ads on users' news feeds." (*Liapes, supra,* 95 Cal.App.5th at p. 916, capitalization omitted.)  Facebook does not disseminate advertisements to all Facebook users, but rather to a certain predetermined number of users the advertiser pays to reach.  The price the advertiser pays depends on the number of users to whom Facebook shows the advertisement.  The complaint alleges this constitutes a service Facebook offers not just its advertisers, but its users; that is, Facebook provides users a "unique set of paid advertisements that Facebook, in conjunction with advertisers, decides to place on Facebook users' own Facebook pages."

Shah "is a 37-year-old man who . . . [a]t all relevant times . . . regularly used Facebook."  "As part of his regular use of Facebook, he has been interested in receiving advertising and other information about education service[ ] opportunities in Facebook advertisements."  Woodbury is a university that "offers a variety of undergraduate and graduate degree[ ]" programs and

at all relevant times advertised these programs through Facebook.

Shah's complaint describes Facebook's advertising tools in detail. "After Facebook users join Facebook, . . . they are required to provide" age and gender information, and using this data to "[c]lassify[ ] and segregat[e] Facebook users by age and gender" "is integral to Facebook's advertising platform" in several ways.

First, "[w]hen an advertiser seeks to advertise [on] Facebook [or its related platforms] . . . the advertiser is required by Facebook to specify the parameters of the target audience of Facebook users who will be eligible to receive the advertisement." This is referred to as "audience selection." Among the parameters Facebook requires the advertiser to use in making its mandatory audience selection are age and gender. Facebook presents the advertiser with drop-down menus of different age groups and gender classifications and requires the advertiser to select one from each. The default settings are "all genders" and age "18 to 65+, which means that anyone who is 18 years old or older would receive the advertisement," "[b]ut Facebook strongly encourages advertisers to narrow" these selections to make an advertisement "more effective." "Any Facebook user who is not within the relevant [age and gender-based] audience selection will not have the opportunity to receive that specific paid advertisement."

Second, because an advertiser's chosen audience will contain more users than the advertiser paid Facebook to show its advertisement to, Facebook must determine "which users within an [advertiser's] audience selection will actually receive the advertisement." Facebook does this using its "ad delivery

5

algorithm" that "directly relies upon both the age and gender of Facebook users." Facebook employs this algorithm "regardless of whether the advertiser directs Facebook to limit the age or gender of its audience selection. *This means that even when advertisers do not want to discriminate based on age or gender in their . . . delivery of advertisements, Facebook itself decides to discriminate and does discriminate based on age and gender, and Facebook does so on behalf of the advertisers.*" (Italics added.)

The complaint alleges that, by using these tools, Woodbury and Facebook "regularly denied Mr. Shah advertisements and information about [Woodbury's] [educational] service[ ] opportunities by excluding him from receiving Facebook advertisements about those opportunities, including the types of advertisements he would have clicked on and pursued."

The complaint alleges two theories of Unruh Act liability against Woodbury: (1) Woodbury denied Shah, based on his age and gender, access to the educational services *Woodbury* offers by instructing Facebook to only advertise Woodbury's educational programs to a particular "audience selection" (females age 18-24), and (2) Woodbury aided and abetted Facebook in denying Shah, based on his age and gender, the full benefits of the information-providing services *Facebook* offers.

## C. Demurrer and Motion to Strike

Woodbury demurred to the complaint on the basis that Shah lacked standing to assert his claims. The court concluded that, although Shah *had* alleged facts sufficient to establish standing to sue nonparty Facebook, he had not established his standing to sue Woodbury, the lone defendant in the action. The court explained that Shah alleged he was a Facebook user and that a benefit Facebook offers its users—one he was partially

6

denied due to his gender and age—is access to information from Facebook advertisers. By contrast, Shah had not alleged that he "transact[ed] with [Woodbury]," "attempted to use [Woodbury's] services and encountered a discriminatory policy which prevented him from transacting with [Woodbury]," or "interacted with [Woodbury] in a manner that is anything more than mere awareness of [its] alleged discriminatory policy."

The court further concluded that Shah also had not sufficiently alleged a claim against Woodbury for aiding and abetting Facebook's alleged Unruh Act violations. Rather, the complaint "merely stated [Woodbury] provided an advertisement to Facebook and that Facebook applied its algorithm to exclude older men on advertisers' behalf . . . even in the absence of an advertiser's request that [an] advertisement be limited to audiences of certain ages and genders."

The court sustained the demurrer and, "out of an abundance of caution" granted Shah leave to amend. Because the court concluded Shah had not established a legally cognizable theory on which to recover *any* damages from Woodbury under the Unruh Act, the court also granted Woodbury's companion motion to strike Shah's statement of punitive damages.[4]

---

[4] The court also concluded that the allegations against Woodbury do not support punitive damages for the additional reason that they do not reflect the oppressive, fraudulent, or malicious behavior section 3294 requires. On appeal, Shah challenges this aspect of the court's ruling as well. We need not address this issue, however, because we agree with the trial court that Shah failed to allege facts sufficient to establish a legally cognizable Unruh Act claim, which is an independently sufficient basis for affirming the court's ruling on the motion to strike.

7

## D. Judgment of Dismissal

Woodbury filed an ex parte application for dismissal on the basis that Shah failed to amend his complaint after the court sustained a demurrer thereto with leave to amend. The court initially denied the application and gave Shah additional time to amend. After this additional time had expired without amendment, the court granted Woodbury's unopposed motion to dismiss pursuant to Code of Civil Procedure section 581, subdivision (f)(2). The court entered a judgment of dismissal with prejudice. Shah appealed both the judgment and the order striking his statement of punitive damages.

## DISCUSSION

On appeal, Shah does not challenge the court's conclusion that he lacked standing to pursue an Unruh Act claim against Woodbury on the theory that Woodbury denied him equal access to the services *Woodbury* offers. Nor could he; the court correctly concluded that, having failed to allege facts sufficient to establish that Shah ever presented himself to Woodbury seeking its educational services, Shah lacked standing to sue Woodbury on this theory. (See *White, supra*, 7 Cal.5th at pp. 1023 & 1026-1028.)

Rather, Shah challenges the court's ruling as it applies to his theory that Woodbury aided and abetted Facebook in Facebook's denying Shah, based on his age and gender, full access to the information-providing services Facebook offers its users. Under such a theory, Shah's Unruh Act claim against Woodbury is derivative of Facebook's alleged Unruh Act violation, which the court concluded Shah has sufficiently alleged standing

8

to challenge.[5]  Thus, if Shah has sufficiently alleged Woodbury aided and abetted Facebook, he has sufficiently alleged standing to pursue such a derivative Unruh Act claim against Woodbury as well.  We review this issue de novo, conducting an independent review to determine whether the complaint, liberally construed, alleges facts sufficient to establish Woodbury aided and abetted Facebook's alleged Unruh Act violation.  (See *Liapes, supra*, 95 Cal.App.5th at p. 919.)

The Unruh Act directly provides for aiding and abetting liability in that it permits "any person aggrieved by . . . conduct [violating the Act]" (§ 52, subd. (c)) to bring a cause of action not only against any person or entity that engages in such conduct, but those who "aid[ ] or incite[ ]" such conduct as well (§ 52, subd. (a)).  Aiding and abetting another in the commission of an offense (such as an intentional tort) requires, inter alia, that the aider/abettor provide "substantial . . . encouragement" or "substantial assistance to the other in accomplishing a tortious result."  (*Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318, 1325; accord, *Liapes, supra*, 95 Cal.App.5th at pp. 926-927.)  The complaint alleges that Facebook's advertisement delivery algorithm routinely denies Facebook users access to

---

[5] The court reasoned that, accepting as true the facts as pleaded in the complaint, Shah was a user of Facebook, and Facebook intentionally denied him equal access to information from Facebook advertisers, based on Shah being of a certain age and gender.  At least one court has accepted such allegations as sufficient to establish Facebook violated the Unruh Act, and that the type of user Shah alleges to be in his complaint has standing to pursue that claim.  (See *Liapes, supra*, 95 Cal.App.5th at pp. 915-916 [addressing the same Facebook advertising practices alleged here in a lawsuit against Facebook].)

advertisements based on their age and gender, and that Facebook employs the algorithm regardless of whether the advertiser's "audience selection" instructed Facebook to exclude recipients of a particular age or gender. In other words, the complaint alleges that, regardless of what audience selection Woodbury made, Facebook was going to engage in the conduct constituting the Unruh Act violation that caused Shah harm. Woodbury instructing Facebook to do something Facebook would do anyway as a standard practice cannot constitute Woodbury substantially assisting or substantially encouraging Facebook to engage in that conduct.

Shah counters that "[e]ven if Facebook's system further optimizes delivery [of advertisements], Woodbury's initial age constraint is independently actionable because it is itself a discriminatory criterion that materially contributes to the exclusion." But whether Woodbury's selection of an audience for its advertisement constitutes discrimination and/or whether that discrimination is actionable on a theory other than that Woodbury thereby aided and abetted Facebook in violating the Unruh Act is not an issue on appeal. The court concluded, we agree, and Shah does not dispute, that Shah did not allege facts sufficient to establish his standing to sue Woodbury on such a non-aiding-and-abetting theory. The only salient issue on appeal is whether Woodbury's conduct substantially assisted Facebook in discriminatorily disseminating advertisements to Shah. The complaint repeatedly alleges Facebook employs its allegedly discriminatory advertisement delivery algorithm regardless of the audience an advertiser like Woodbury selects. These allegations cannot support that Woodbury substantially assisted Facebook in limiting, based on age and gender, the

10

audience of Facebook users for Woodbury's advertisements. Indeed, the allegations are inconsistent with Woodbury providing such assistance.

In arguing to the contrary, Shah cites *Liapes*, *supra*, 95 Cal.App.5th 910, which involves many allegations regarding Facebook's advertising practices that are virtually identical to those in Shah's complaint. But *Liapes* held the plaintiff had sufficiently alleged that Facebook—which, unlike here, was a named defendant in the case—substantially assisted nonparty advertisers in violating the Unruh Act, not that the advertisers assisted Facebook. (See *Liapes*, *supra*, at p. 927.) Consistent with this, Shah's complaint at times expressly describes Facebook as "aid[ing] [and] abet[ting]" Woodbury[6]—not, as he argues on appeal, Woodbury playing this role for Facebook.

Because the allegations not only do not establish, but are inconsistent with, Woodbury having substantially assisted Facebook in Facebook's alleged discrimination against Shah, and because Shah does not (and could not successfully) challenge the court's conclusion that he lacked standing to sue Woodbury

---

[6] Specifically, the complaint alleges: "In addition, when Facebook *encourages* advertisers, including [Woodbury], to deny their valuable advertisements to the excluded protected class, including [Shah], *it gives companies, including [Woodbury], the ability* to exclude the protected class from receiving their advertisements, and knowingly places advertisements for opportunities that exclude the protected class. *In doing so, [Woodbury] aids, abets, and/or incites Facebook* in denying certain protected class [*sic*], including [Shah], the full and equal accommodations, advantages, facilities, and services of their business establishments." (Capitalization omitted & italics added.)

11

based on a direct theory of Unruh Act liability, the court correctly sustained the demurrer to Shah's complaint and struck the statement of punitive damages.

Further, because Shah failed to amend his complaint despite receiving leave from the court to do so, the court also did not err in entering a judgment of dismissal under Code of Civil Procedure section 581, subdivision (f)(2). (See Code Civ. Proc., § 581, subds. (b) & (f)(2) ["[a]n action may be dismissed" if "after a demurrer to the complaint is sustained with leave to amend, the plaintiff fails to amend it within the time allowed by the court and either party moves for dismissal"].)

## DISPOSITION

The judgment and order are affirmed. Respondent is awarded its costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:



WEINGART, J.



M. KIM, J.

12